# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THE MANITOWOC COMPANY, INC.,

        Plaintiff,

v.                                  Case No.:

CHRISTOPHER BRISCH,

        Defendant.

_____/

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ENTRY OF PRELIMINARY INJUNCTION THEREAFTER, AND SUPPORTING MEMORANDUM OF LAW

Plaintiff, The Manitowoc Company, Inc. ("Plaintiff," "Manitowoc," or "the Company"), by and through its undersigned counsel, hereby respectfully moves this Court for a temporary restraining order and, thereafter, entry of a preliminary injunction, to preclude Defendant, Christopher Brisch ("Defendant" or "Brisch"), and all other persons or entities acting in active participation with Defendant from: (1) disclosing to a third party and/or using for Defendant's personal benefit, directly or indirectly, any confidential information of Manitowoc's; (2) misappropriating Manitowoc's trade secrets in violation of the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq*.; and (3) further utilizing the confidential information and/or trade secrets he took from Manitowoc and/or disclosed to a third party.

This Motion is made pursuant to Federal Rules of Civil Procedure 65(a) and (b) on the grounds that Defendant has violated, and continues to violate, the Non-Disclosure/Confidentiality Agreement into which he entered with Manitowoc by disclosing

to one or more third parties, including but not limited to former Manitowoc employee Craig Reuther and/or Defendant's current employer, Fischbein LLC and/or Duravant, and/or using for his and/or his current employer's benefit, directly or indirectly, confidential information of Manitowoc's. Similarly, Defendant has violated, and continues to violate, the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.*, by misappropriating certain of Manitowoc's trade secrets. This Motion is supported by the following Memorandum of Law, Manitowoc's Verified Complaint for Monetary and Injunctive Relief, which is being filed concurrently herewith, and all other pleadings, records, and papers on file in this action.

## MEMORANDUM OF LAW

### I. INTRODUCTION.

Manitowoc's confidential, proprietary information and trade secrets are at the heart of its business. Manitowoc invested significant time, money, and manpower in creating and maintaining the secrecy of such information. The Company is therefore justified in restricting its employees from disclosing any such confidential, proprietary information and/or trade secrets in order to protect its legitimate business interest in shielding said information and/or documents from other individuals, businesses, and/or competitors. Without such protections, and/or in the event of a breach of such restrictions, irreparable harm to Manitowoc will undoubtedly result. The only way to prevent any further harm in the event of a breach is by way of a temporary restraining order and/or injunction against the breaching party. Such is the case here. More specifically, the only way to atone for and prevent further harm caused to Manitowoc by the multiple and egregious breaches of Defendant's contractual obligations to Manitowoc through his blatant and careless disclosure

and improper use of Manitowoc's confidential, proprietary information and documents and trade secrets is to formally restrain Defendant from engaging in any further similar acts.

Defendant worked for Manitowoc for over 13 years, during which time he explicitly agreed to be bound by certain restrictions on his conduct. Such restrictions included the prohibition on Defendant's ability to disclose and/or use for his or a third party's benefit Manitowoc's confidential and/or proprietary information and/or documents, including its trade secrets, throughout the course of his employment and for a period of two years thereafter. In exchange for Defendant's latest agreement, Manitowoc promoted Defendant and he received all the benefits associated with said promotion. Nonetheless, thereafter, Manitowoc proceeded to uncover multiple blatant occasions where Defendant entirely disregarded the restrictions to which he had explicitly agreed in exchange for his promotion, both during his employment and after his resignation from Manitowoc, in direct violation of his contractual obligations. Specifically, Defendant disclosed to at least one third party multiple Manitowoc confidential documents and trade secrets, as well as utilized for his own and/or at least one third party's benefit said documents following the cessation of his employment with Manitowoc. Given Manitowoc's immediate irreparable harm in losing the confidentiality of the documents and trade secrets disclosed and/or misappropriated by Defendant, the only way to prevent further harm is to issue a temporary restraining order and injunction barring Defendant from inflicting any further harm on Manitowoc.

Manitowoc is entitled to a temporary restraining order and injunction against Defendant because Defendant's contract is enforceable, and Defendant blatantly breached said contract on numerous occasions. Therefore, Manitowoc has a very high likelihood of

success on the merits. Additionally, Defendant will not experience any harm as a result of the entry of a temporary restraining order and/or injunction against him, as opposed to Manitowoc which has already presumptively incurred significant irreparable harm based on Defendant's disclosures and misappropriations of the Company's trade secrets and proprietary documents and information, and which will similarly continue to experience further harm in the event Defendant is not formally restrained from continuing to engage in any similar acts. Finally, no public interest would be harmed by the entry of a temporary restraining order and/or injunction against Defendant. In fact, the public benefits from the proper enforcement of a party's contractual obligations to another party.

Pursuant to 65(b)(1), the facts set forth in Manitowoc's Verified Complaint demonstrate that immediate and irreparable injury, loss, or damage will result if a temporary restraining order is not immediately entered, including but not limited to Defendant's further disclosure and/or misappropriation of Manitowoc's confidential information and trade secrets coupled with the concern that evidence may be deleted or destroyed without an order, eliminating the necessity of notice to Defendant prior to the entry of same. For all the reasons set forth herein, it is therefore plain Manitowoc is entitled to a temporary restraining order and, thereafter, a preliminary injunction, against Defendant, warranting this Court's grant of the Company's current Motion.

## II.    BACKGROUND.

The Manitowoc Company, Inc. is a global leader in cranes and foodservice equipment. Manitowoc is comprised of numerous divisions, including Manitowoc FSG Operations, LLC ("FSG Operations"). FSG Operations designs, manufactures, supplies, and

services best-in-class food and beverage equipment for the global foodservice market. [Compl. at ¶ 6]. Defendant commenced his employment with Manitowoc on or around May 30, 2003. [Compl. at ¶ 10]. On or around April 28, 2014, Defendant was promoted to the position of Director of Finance II for FSG Operations. [Compl. at ¶ 14]. At the time of and as a prerequisite to Defendant's promotion to Director of Finance II, Defendant was required to enter into and sign a Non-Disclosure/Confidentiality Agreement ("the Agreement") with Manitowoc. [Compl. at ¶ 15, Ex. A].

The Agreement contains certain post-employment restrictions regarding non-disclosure of confidential information by which Defendant agreed to be bound during his employment with Manitowoc and for a period of two (2) years following the cessation of said employment, in exchange for the consideration he received through his promotion to Director of Finance II. [Compl. at ¶ 16, Ex. A]. Specifically, Defendant agreed that:

> [A] duty to protect the Company's confidential information is imposed upon Employee by law…. In addition, and without limiting the duties imposed by law, Employee agrees, for his/her period of employment with the Company and for the two (2) years following Employee's termination of employment, not to disclose to a third party or use for his/her personal benefit, directly or indirectly, any confidential information of the Company, except as required by law or with the express written consent of the Company.

[Compl. at ¶ 17, Ex. A at ¶ 1]. Under the Agreement, "confidential information" is defined as including, but not limited to the following:

> [T]rade secrets, design documents, copyright material, inventions, technology, processes, marketing data, business strategies, financial information and records, product information (including, without limitation, any product designs, specifications, capabilities, drawings, diagrams, blueprints, models and similar items), customer and prospective customer lists, supplier and vendor lists, product pricing formulas, software and similar information, in any form (whether oral, electronic, written, graphic or other printed form or obtained from

access to or observation of the Company's facilities and operations), which is not generally known by or readily available to the public at the time of disclosure.

[Compl. at ¶ 18, Ex. A at ¶ 1].

Defendant also agreed and acknowledged in the Agreement that, if he breached the terms of the Agreement, any such breach(es) would cause Manitowoc irreparable injury and entitle the Company to, among other types, injunctive relief:

> Employee acknowledges that an irreparable injury will result to the Company and its business in the event of a breach of any of the covenants or obligations of Employee contained in this Agreement. Employee also acknowledges and agrees that the damages or injuries which the Company may sustain as a result of such a breach are difficult to ascertain and money damages alone would not be an adequate remedy to the Company. Employee therefore agrees that if a controversy arises concerning the rights or obligations of a party under this Agreement or Employee breaches any of the covenants or obligations contained in this Agreement, the Company shall be entitled to any injunctive, or other relief necessary to enforce, prevent or restrain any violation of the provisions of this Agreement (without posting a bond or other security). Such relief, however, shall be cumulative and non-exclusive and shall be in addition to any other right or remedy to which the Company may be entitled.

[Compl. at ¶ 19, Ex. A at ¶ 8].

Despite Defendant's explicit agreement to refrain from disclosing to any third party any confidential information of Manitowoc, whether during his employment or for the two-year period following the cessation of same, as well as Manitowoc's fulfillment of all its obligations under the parties' Agreement and Defendant's receipt of all the benefits and consideration associated with his promotion to Director of Finance II, Defendant took affirmative steps during and after his employment to violate his Agreement on numerous occasions. [Compl. at ¶ 21]. Similarly, he took affirmative steps during and after his

PD.17109557.1

employment to misappropriate a number of Manitowoc's trade secrets and/or confidential information. [Id.] Specifically, prior to leaving Manitowoc, Defendant disclosed to third parties, including but not limited to former Manitowoc employee Craig Reuther ("Reuther") and Reuther's employer, Fischbein and/or Duravant, and/or used for his own, Duravant's, and/or Fischbein's benefit certain internal and confidential Manitowoc documents regarding Manitowoc's confidential processes, policies, business strategies, business structure and design, and business operations, to Manitowoc's detriment. [Compl. at ¶¶ 22-23]. To Manitowoc's detriment, Defendant also knowingly misappropriated certain of Manitowoc's trade secrets, including internal Manitowoc documents regarding the Company's confidential and internal formulas, patterns, programs, methods, techniques, and processes, all of which derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use. [Compl. at ¶¶ 25-26]. The referenced confidential information/documents and trade secrets include, but are not limited to, the following: (1) Manitowoc Global Accounting Manual; (2) Manitowoc Foodservice Consolidated Authorization Policy; (3) Manitowoc RACI Decision Matrix; (4) Manitowoc Foodservice Decision Rights Modification Guide; (5) Manitowoc Americas Decision Rights Guide; and (6) Manitowoc University/KOF Training Decision Rights Detail. [Compl. at ¶¶ 23, 26].

To Manitowoc's further detriment and inconvenience, while still employed with Manitowoc, Defendant affirmatively breached his duty of loyalty, good faith, and fair dealing that he owed to Manitowoc as a key employee and officer. [Compl. at ¶ 28]. Specifically,

Defendant willfully failed to devote his full time and efforts to Manitowoc, instead planning his departure to join Fischbein and/or Duravant and corresponding intent to take confidential information and/or trade secrets with him when he left. [Compl. at ¶ 29]. Defendant also took, disclosed to third parties, including but not limited to Reuther, Fischbein, and/or Duravant, and used for his, Fischbein's, and/or Duravant's benefit certain internal and privileged documents and/or information of Manitowoc's. [Id.]

On or around October 17, 2014, Defendant voluntarily resigned from his position with Manitowoc to accept employment with Fischbein LLC and/or Duravant. [Compl. at ¶¶ 11-13]. Upon information and belief, since his resignation from Manitowoc and commencement of employment with Fischbein and/or Duravant, Defendant has continued to use for his own and Fischbein and/or Duravant's benefit the confidential information he improperly disclosed and took from Manitowoc, in violation of his Agreement with Manitowoc. [Compl. at ¶¶ 22-24]. Likewise, upon information and belief, since his resignation from Manitowoc and commencement of employment with Fischbein and/or Duravant, Defendant has continued to misappropriate Manitowoc's trade secrets, in violation of the Florida Uniform Trade Secrets Act. [Compl. at ¶¶ 25-27].

As a result of Defendant's multiple and egregious breaches of the parties' Non-Disclosure/Confidentiality Agreement, misappropriation of Manitowoc's trade secrets, and breaches of his duty of loyalty, good faith, and fair dealing to Manitowoc, Manitowoc has suffered and incurred damages, including but not limited to attorneys' fees and costs, exemplary damages, loss of confidential information and trade secrets, and the loss of the

value of the compensation the Company paid to Defendant during the period in which he was breaching his duty of loyalty to Manitowoc. [Compl. at ¶¶ 38, 44, 50].

Manitowoc therefore seeks a temporary restraining order and preliminary injunction to enjoin Defendant and all other persons or entities acting in active participation with the Defendant from: (1) disclosing to a third party and/or using for Defendant's personal benefit, directly or indirectly, any confidential information of Manitowoc's; (2) misappropriating Manitowoc's trade secrets in violation of the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq.*; and (3) further utilizing the confidential information and/or trade secrets he took from Manitowoc and/or disclosed to a third party.

## III. CHOICE OF LAW.

Defendant's Agreement with Manitowoc contains a choice of law provision, which explicitly states as follows: "The parties agree that the construction and interpretation of this Agreement shall be governed by the laws of the State of Wisconsin." [Compl. at ¶ 20, Ex. A at ¶ 14].[1] Courts within the Eleventh Circuit "will enforce choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) (internal citations omitted).

A district court in the Middle District of Florida previously ruled favorably on circumstances analogous to those here, which was upheld on appeal. Specifically, the Fifth Circuit in *Wilkinson v. Manpower, Inc.* enforced a choice-of-law provision contained in a restrictive covenant that directed the agreement was to be "interpreted and governed by the

---

[1] Given the choice-of-law provision contained in the Agreement extends only to the construction and interpretation of the Agreement itself, Manitowoc brings and asserts its misappropriation of trade secrets claim pursuant to the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.*

laws of the State of Wisconsin." 531 F.2d 712, 715 (5th Cir. 1976).[2] The court enforced said provision because Wisconsin law did not conflict with Florida's public policy, further explaining that a "[m]ere difference between the law of the forum and that of the foreign state does not of itself prevent enforcement of the foreign law or rights based thereon if such law is not against the public policy of the forum." *Id.*; *see also In re Printronics, Inc.*, 189 B.R. 995, 1002 (N.D. Fla. 1995) (following *Wilkinson* and holding that Florida courts will enforce a choice-of-law provision in a restrictive covenant so long as the state's chosen law does not violate Florida public policy).

The applicable standard for enforcement of a restrictive covenant in Wisconsin is substantially similar to Florida's standard for enforcement of a restrictive covenant, as set forth in Section 542.335 of the Florida Statutes. *Compare Heyde Cos. v. Dove Healthcare, LLC*, 2002 WI 131, ¶ 16, 258 Wis.2d 28, 654 N.W.2d 830 (explaining that in order to be valid under Section 103.465 of the Wisconsin Statutes, a restrictive covenant must: (1) be necessary to protect the employer; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive to the employee; and (5) not be contrary to public policy), *with North American Products Corp. v. Moore*, 196 F.Supp.2d 1217, 1228 (M.D. Fla. 2002) (stating restrictive covenants are valid under Section 542.335 of the Florida Statutes if the employer can prove: (1) the existence of one or more legitimate

---

[2] When *Wilkinson* was decided in 1976, the District Court for the Middle District of Florida was part of the Fifth Circuit. As such, Wilkinson is binding precedent. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) ("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit (the "former Fifth" or the "old Fifth"), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.").

business interests justifying the restrictive covenant; and (2) that the contractually specified restraint is reasonably necessary to protect the established interests of the employer).

Accordingly, Wisconsin restrictive covenant law does not violate Florida public policy, warranting this Court's enforcement of the choice-of-law provision contained in Defendant's Agreement.

## IV.    ARGUMENT AND AUTHORITIES.

In order to be granted a temporary restraining order and/or injunction, the moving party must establish the following: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 374 (2008); Middle District of Florida Local Rule 4.05(b)(4). Manitowoc easily meets all of the necessary elements, warranting entry of a temporary restraining order and, thereafter, an injunction against Defendant.

In fact, on March 13, 2015, the Honorable Virginia M. Hernandez Covington, sitting in the United States District Court for the Middle District of Florida, Tampa Division, granted The Manitowoc Company, Inc. a temporary restraining order in a related case, against a defendant who engaged in the same or similar conduct as Brisch, in violation of the same Non-Disclosure/Confidentiality Agreement with Manitowoc and the Florida Uniform Trade Secrets Act. *See The Manitowoc Company, Inc. v. Craig Reuther*, Case No. 8:15-cv-

559-T-33MAP (M.D. Fla. March 13, 2015), at [Dkt. #6]. In so doing, Judge Covington considered factual circumstances and legal arguments similar to those set forth herein, and found: (1) a reasonable likelihood that Manitowoc would succeed on the merits of its claims against the defendant; (2) that Manitowoc demonstrated a meaningful risk of irreparable harm in the absence of a temporary restraining order; (3) that Manitowoc had suffered harm and would continue to do so as a result of the defendant's alleged actions; and (4) that the public interest would be served by the issuance of a temporary restraining order. *See id.* The temporary restraining order that was granted in the aforementioned case enjoined the defendant from the same activities as requested by Manitowoc against Brisch herein. The same result should therefore follow in this case, for all the reasons the temporary restraining order was granted by Judge Covington in that case.

## A.    Manitowoc Has A Substantial Likelihood Of Success On The Merits.

Manitowoc has a substantial likelihood of success on the merits of the underlying case in this matter because Defendant's Agreement is enforceable and Defendant breached the explicit terms of same. Similarly, Defendant misappropriated Manitowoc's trade secrets.[3]

There is no statutory standard in Wisconsin that explicitly governs the validity and/or enforceability of a non-disclosure and/or confidentiality provision in a contract; on the other hand, there is a statutory and common law standard in Wisconsin that is routinely used to

---

[3] Because the parties' Agreement defines "confidential information" to include trade secrets, this Memorandum's discussion of Defendant's disclosure of confidential information in breach of his Agreement is intended to be read as including Defendant's breaches as they relate to his misappropriation of the Company's trade secrets as well. [Compl. at ¶ 18, Ex. A at ¶ 1]. Thus, in order to avoid redundancy, and for purposes of this pleading only, Manitowoc will not engage in a separate discussion of Defendant's actions as they relate to misappropriation of trade secrets.

12

assess the validity and/or enforceability of covenants not to compete. *See* Wis. Stat. §

103.465; *The Manitowoc Company, Inc. v. John M. Lanning*, Case No. 2011-CV-000216

(Manitowoc County Cir. Ct. Sept. 23, 2013) (holding that Wis. Stat. § 103.465 specifically

applies to covenants not to compete, explaining "[t]he statute does not literally apply to

[confidentiality and non-solicitation agreements].").  Wis. Stat. § 103.465 states as follows:

> A covenant by an assistant, servant or agent not to compete with his or
> her employer or principal during the term of the employment or agency,
> or after the termination of that employment or agency, within a
> specified territory and during a specified time is lawful and enforceable
> only if the restrictions imposed are reasonably necessary for the
> protection of the employer or principal. Any covenant, described in this
> section, imposing an unreasonable restraint is illegal, void and
> unenforceable even as to any part of the covenant or performance that
> would be a reasonable restraint.

The five-factor common law standard used to assess the validity and/or

reasonableness of a covenant not to compete under Wis. Stat. § 103.465 is as follows:

> A restrictive covenant must:  (1) be necessary to protect the employer;
> (2) provide a reasonable time limit; (3) provide a reasonable territorial
> limit; (4) not be harsh or oppressive to the employee; and (5) not be
> contrary to public policy.

*Heyde*, 2002 WI 131, ¶ 16 (citations omitted).[4]

---

[4] Although some restrictive covenants fall within Wis. Stat. § 103.465's ambit, Wisconsin courts have made
clear that not all covenants do. Wis. Stat. § 103.465's "public policy foundation is that an employer should not
be able to limit the mobility of employees with a restrictive covenant." *MSI Preferred Services, Inc. v.
Clements Agency*, 2006 WI App 175, ¶ 10, 295 Wis. 2d 841, 721 N.W.2d 158. Thus, only restrictions which
limit competition and/or explicitly restrain trade are to be judged under Wis. Stat. § 103.465. *See Heder v. City
of Two Rivers*, 295 F.3d 777, 780-81 (7th Cir. 2002); *Tatge v. Chamber & Owen, Inc.*, 219 Wis. 2d 99, 103, 579
N.W.2d 217 (Wis. 1998); *Union Central Life Ins. v. Balistrieri*, 19 Wis. 2d 265, 270, 120 N.W.2d 126 (Wis.
1963); *Lanning, supra*.  Defendant's Agreement does nothing to limit his—or any other Manitowoc
employee's—mobility.  A mere prohibition against disclosure and/or use of Manitowoc's confidential and
proprietary information has no detrimental effect whatsoever upon one's mobility and/or ability to perform in
one's profession. Quite the contrary, Defendant was free to join any employer after leaving Manitowoc; all
other Manitowoc employees are free to leave Manitowoc and join any employer; any employer is free to hire
anyone, including any Manitowoc employee(s); and no one's mobility and/or ability to practice in their chosen
field is in any way hindered.  Rather, the only restriction is that Defendant could not disclose and/or use

Even assuming, *arguendo*, Wis. Stat. § 103.465 applies to Defendant's Agreement, the Agreement easily fulfills all the foregoing requirements. Manitowoc's non-disclosure provision undoubtedly serves to protect a legitimate business interest—keeping the Company's confidential, proprietary information confidential and inaccessible to other individuals, businesses, and/or competitors which could use it for their own benefit, to the significant detriment of Manitowoc. After all, Manitowoc is the entity that expended the time, money, and manpower to formulate and protect the confidential, proprietary information in the first instance.

Additionally, Wisconsin courts routinely enforce non-disclosure agreements with a two-year post-employment restriction like the one at issue here. *See, e.g., Star Direct, Inc. v. Dal Pra*, 2009 WI 76, 319 Wis. 2d 274, 767 N.W.2d 898; *see also Wilkinson v. Manpower, Inc.*, 531 F.2d 712, 716-17 (5th Cir. 1976) (stating that it appears "indisputable" that a two-year restriction is reasonable in Wisconsin). Similarly, with regard to non-disclosure agreements, Wisconsin courts have allowed the absence of a geographical limitation given the inherent contradiction in such a requirement in the context of disclosure of confidential information (*i.e.*, disclosure of confidential information is harmful no matter the geographic location or distance away of the individual engaging in the wrongful disclosure and/or use).

---

Manitowoc's confidential and proprietary information prior to and/or after leaving his employment with Manitowoc, given the significant detriment to Manitowoc's business such action(s) would cause. Defendant's Agreement contains absolutely no restrictions on Defendant's, any other Manitowoc employee's, and/or any other employer's, mobility, employment, and/or hiring opportunities, divesting Wis. Stat. § 103.465 of any controlling force here, based on its own explicit limits. This Court must therefore analyze this case as it would any other "run of the mill" breach of contract claim, determining whether is a valid agreement, a breach of said agreement, and damages. *Steele v. Pacesetter Motor Cars, Inc.*, 2003 WI App 242, ¶ 11, 267 Wis. 2d 873, 672 N.W.2d 141. A valid contract requires an offer, acceptance, and consideration. *Briggs v. Miller*, 176 Wis. 321, 325, 186 N.W. 163 (Wis. 1922). All the necessary foregoing elements and facts supporting same are well-pled in Manitowoc's Verified Complaint, and thus support the plain enforceability of Defendant's Agreement. Even assuming, *arguendo*, for purposes of this Motion, Wis. Stat. § 103.465 governs Defendant's Agreement, the Agreement is, on its face, reasonable and enforceable thereunder. *See, e.g., Lanning, supra.*

14

*See, e.g.*, *Nalco Chemical Co. v. Hydro Technologies, Inc.*, 984 F.2d 801, 803 (7th Cir. 1993) (citing *Rollins Burdick Hunter, Inc. v. Hamilton*, 101 Wis. 2d 460, 468-69, 304 N.W.2d 752 (Wis. 1981)); *see also IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581 (7th Cir. 2002).

Furthermore, restricting an employee from disclosing his/her employer's and/or former employer's confidential and proprietary information is not harsh or oppressive to the employee and does not contravene any public policy. The prohibition does not inhibit Defendant's ability to pursue a livelihood. It does not impose an unreasonable, or really any, burden on Defendant. It does not prohibit Defendant from utilizing his particular skills in any other employment. It does not stifle competition. In fact, the public interest is served rather than harmed by this Court's enforcement of Defendant's Agreement because "[t]he public benefits from the enforcement of contractual obligations." *Farmers Ins. Exch. v. Sorenson*, 99 F. Supp. 2d 1000, 1008 (E.D. Wis. 2000). Defendant's Agreement is therefore valid and enforceable on its face.[5]

Finally, the evidence demonstrates that Defendant violated his Agreement on numerous occasions both during and subsequent to the termination of his employment with Manitowoc. Specifically, prior to and after leaving Manitowoc, Defendant disclosed to third parties, including but not limited to former Manitowoc employee Craig Reuther and

---

[5] It bears mention in this regard that one Wisconsin Court has recently held that, even assuming, *arguendo*, Wis. Stat. § 103.465 and the five-factor common law standard applied to a near-identical non-solicitation/non-disclosure agreement drafted and entered into by Manitowoc, the post-employment restrictions contained therein satisfied this test and were valid and enforceable under Wisconsin law. *See Lanning, supra*. For all intents and purposes, the relevant substantive content of the agreement at issue in *Lanning* is the same as the Agreement Defendant signed in this case. Because the *Lanning* Court found Manitowoc's non-solicitation/non-disclosure agreement enforceable, so too should this Court find Manitowoc has a substantial likelihood of success on the merits with regard to enforceability of Defendant's Agreement in this case.

Reuther's employer, Fischbein and/or Duravant, and/or used for his own, Duravant's, and/or Fischbein's benefit certain internal and confidential Manitowoc documents regarding Manitowoc's confidential processes, policies, business strategies, business structure and design, and business operations, to Manitowoc's detriment. Defendant thereby knowingly misappropriated certain of Manitowoc's trade secrets, including internal Manitowoc documents regarding the Company's confidential and internal formulas, patterns, programs, methods, techniques, and processes, all of which derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use. The referenced confidential information and/or documents and trade secrets include, but are not limited to, the following: (1) Manitowoc Global Accounting Manual; (2) Manitowoc Foodservice Consolidated Authorization Policy; (3) Manitowoc RACI Decision Matrix; (4) Manitowoc Foodservice Decision Rights Modification Guide; (5) Manitowoc Americas Decision Rights Guide; and (6) Manitowoc University/KOF Training Decision Rights Detail. [Cmplt. at ¶¶ 22 – 27].

Based on the foregoing, it is plain Manitowoc has a substantial likelihood of success on the merits with regard to its breach of contract and misappropriation of trade secrets claims against Defendant, thereby fulfilling the first necessary element for issuance of a temporary restraining order and/or preliminary injunction.

**B.**     <u>**Manitowoc Will Suffer Irreparable Harm If A Temporary Restraining Order And Preliminary Injunction Are Not Issued Against Defendant.**</u>

At the time Defendant entered into his Agreement with Manitowoc, he explicitly conceded that a breach of the terms of the Agreement would result in irreparable injury to the

Company. [Compl. at ¶ 19, Ex. A at ¶ 8]. Defendant also explicitly agreed and acknowledged that, if he breached the terms of the Agreement, any such breach(es) would entitle Manitowoc to, among other types of relief, an injunction. [Id.]

Moreover, under Florida law, irreparable harm is presumed when a breach of a valid restrictive covenant occurs. Fla. Stat. § 542.335(1)(j) ("The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant."). It is therefore clear Manitowoc has suffered, and will continue to suffer, irreparable harm if a temporary restraining order and preliminary injunction are not issued by this Court against Defendant, thereby entitling Manitowoc to the relief it seeks in this Motion.

**C.      Manitowoc's Actual Harm Outweighs Any Non-Existent Threat Of Injury To Defendant By The Issuance Of A Temporary Restraining Order And Preliminary Injunction.**

There is no threat of any injury to Defendant should the Court grant Manitowoc's current Motion. Conversely, Manitowoc has already suffered significant harm and will continue to suffer such harm without a temporary restraining order and subsequent preliminary injunction. Manitowoc's harm therefore very plainly outweighs any potential, yet non-existent, threat of injury that a temporary restraining order and/or preliminary injunction would pose to Defendant.

Granting a temporary restraining order and preliminary injunction would serve only to preserve the *status quo* by preventing Defendant from any further disclosure and/or use of Manitowoc's confidential information, and any further misappropriation of Manitowoc's trade secrets. A temporary restraining order and preliminary injunction would not harm

and/or restrict Defendant's employment opportunities and/or ability to make a living in any respect. Nor would it harm and/or restrict Defendant's legitimate rights in any respect. Defendant's new position is not contingent on Defendant's procurement of confidential information and/or trade secrets from his former employer. As such, a temporary restraining order and preliminary injunction would not in any way prevent Defendant from performing his job. Quite the contrary, it would simply shield from further disturbance and harm Manitowoc's legitimate, protectable business interests in its intellectual capital and property and confidential information. Manitowoc simply asks the Court to restrain and enjoin Defendant from further disclosing Manitowoc's confidential information and documents and misappropriating Manitowoc's trade secrets. By doing so, of course, there would be no harsh or oppressive consequences to Defendant.

Conversely, Manitowoc has suffered and will continue to suffer actual harm by Defendant's ongoing disclosure and/or use of Manitowoc's confidential information and trade secrets. Breaches of the nature involved here result in significant harm and expense to the Company, and deprive the Company of the benefit of its bargain contained in the parties' Agreement. It is therefore clear any potential, yet entirely non-existent, threat of injury to Defendant is significantly outweighed by the actual harm already suffered by Manitowoc and that will continued to be suffered by Manitowoc should this Court fail to enter a temporary restraining order and subsequent preliminary injunction against Defendant.

### D.   Granting Manitowoc's Request For A Temporary Restraining Order And Preliminary Injunction Would Serve The Public Interest.

There is no public policy that favors the blatant disregard of one party's contractual rights so as to allow another party's free, illegitimate misappropriation and use of

confidential information and trade secrets. The entire premise behind Manitowoc's requirement that Defendant enter into the Non-Disclosure/Confidentiality Agreement in the first instance, as well as the law's protection of a company's trade secrets, is to protect Manitowoc's legitimate business interests of maintaining the secrecy of its confidential information and trade secrets. Defendant agreed to the terms of the Agreement and is unquestionably subject to the Florida Uniform Trade Secrets Act. No public interest is violated or harmed by the protection of Manitowoc under the Agreement and Florida Statutes by issuance of a temporary restraining order and preliminary injunction thereafter.

The limited application and enforcement of the parties' Agreement encourages open and free movement of Defendant in the employment marketplace, while encouraging Manitowoc to spend the necessary capital on its employees, business, and development of proprietary information and trade secrets, restricting only the unfair use of any such confidential information and/or trade secrets by any one individual to raid the employer of its investment. To do otherwise would discourage such investment and, in the long run, result in less business growth and overall detriment to the functioning of the business. In other words, denial of Plaintiff's Motion would not serve the public interest. The enforcement of Defendant's Agreement presents no harsh or oppressive consequences to Defendant. Defendant agreed to these terms, received his consideration, and is free to individually compete directly against Manitowoc. He just cannot improperly use Manitowoc's confidential information and/or trade secrets in the process.

Again, there is no public policy that favors blatant disregard of Manitowoc's contractual rights and Defendant's contractual obligations in contravention of the contract

itself, resulting in the illegitimate misappropriation and use of Manitowoc's confidential information and trade secrets and irreparable harm to Manitowoc. It is therefore clear public policy would be served through issuance of a temporary restraining order and subsequent preliminary injunction against Defendant.

## V.  CONCLUSION.

For all the reasons set forth herein, it is evident Plaintiff, The Manitowoc Company, Inc., has established that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable injury unless the temporary restraining order and injunction is issued; (3) the threatened injury to Manitowoc outweighs whatever potential damage the proposed injunction may cause Defendant, Christopher Brisch; and (4) if issued, the temporary restraining order and injunction would not be adverse to the public interest.

Manitowoc therefore respectfully requests this Court issue the Company a temporary restraining order and, thereafter, a preliminary injunction against Defendant, to enjoin Defendant and all other persons or entities acting in active participation with the Defendant from: (1) disclosing to a third party and/or using for Defendant's personal benefit, directly or indirectly, any confidential information of Manitowoc's; (2) misappropriating Manitowoc's trade secrets in violation of the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq*.; and (3) further utilizing the confidential information and/or trade secrets he took from Manitowoc and/or disclosed to a third party.

Dated this 15th day of May, 2015.

Respectfully Submitted,

_____/s/ Dennis M. McClelland_____
Dennis M. McClelland (FL Bar No. 0091758)
dennis.mcclelland@phelps.com
**Phelps Dunbar LLP**
100 South Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (813) 472-7865
Facsimile: (813) 472-7570

-and-

Joel S. Aziere (WI Bar No. 1030823)
(*Pro Hac Vice* Admission Anticipated)
jaziere@buelowvetter.com
Suzanne M. Glisch (WI Bar No. 1079803)
(*Pro Hac Vice* Admission Anticipated)
sglisch@buelowvetter.com
**Buelow Vetter Buikema Olson & Vliet, LLC**
20855 Watertown Road, Suite 200
Waukesha, Wisconsin 53186
Telephone: (262) 364-0300
Facsimile: (262) 364-0320

*Attorneys for The Manitowoc Company, Inc.*

PD.17109557.1